UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MONICA L. REYNOLDS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     CAUSE NO. 3:09-CV-376 CAN |
| | ) |
| MICHAEL J. ASTRUE | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On August 17, 2009, Plaintiff Monica L. Reynolds ("Reynolds"), filed her complaint in this Court. Both parties consented to jurisdiction of this Court on November 6, 2009. On December 7, 2009, Reynolds filed an opening brief, and she asks this Court to enter judgment in her favor or remand this matter to the Commissioner. On March 29, 2010, Defendant, Social Security Administration ("SSA"), filed a response. This Court now enters its ruling based upon the record of this case that includes the pleadings, motions, the administrative record, and the briefs of the parties.

**I. PROCEDURE**

On July 12, 2005, Reynolds filed an application for disability insurance benefits ("DIB"). On the same date, Reynolds also filed an application for supplemental security income ("SSI"). In both applications, Reynolds alleged disability beginning December 20, 2003. However, the alleged onset date was later amended to December 20, 2005. Reynolds claims she is entitled to benefits pursuant to Title XVI and Title II of the Social Security Act. See 42 U.S.C. §§ 216(I), 223; 42 U.S.C. §§ 1611, 1614. Reynolds' application was initially denied and again upon reconsideration.

On July 16, 2008, Reynolds appeared at a hearing before an Administrative Law Judge ("ALJ"). On November 14, 2008, the ALJ issued his ruling, concluding that Reynolds was not disabled. The ALJ found that Reynolds had not engaged in substantial gainful activity since the alleged onset of disability on December 20, 2005. The ALJ found that Reynolds had severe impairments of chronic abdominal pain, irritable bowel syndrome, migraine headaches, fibromyalgia, degenerative joint disease, osteoarthritis of the knees, right ankle instability, obesity, depressive disorder, anxiety disorder, post traumatic stress disorder, personality disorder, and a learning disorder. However, the ALJ found Reynolds did not have any impairments that met the listed impairments in 20 C.F.R. app. 1, subpart P. § 404.

Thereafter, the ALJ found that Reynolds had a residual functional capacity ("RFC") sufficient to perform a restricted range of light work. In particular, the ALJ specified that Reynolds: (1) would require a sit stand option, (2) could only occasionally climb stairs, ramps, stoop, balance, kneel, and crouch, (3) could never climb ladders, ropes, or scaffolds, (4) needs to avoid bright lights and loud noise, (5) would be limited to simple, routine, repetitive tasks, (6) no fast-paced or strict production requirements, (7) few, if any, work place changes, (8) only occasional and brief interactions with others, (9) no jobs where reading, spelling, or arithmetic are essential parts of the job.

Further, the ALJ determined that Reynolds could not perform her past relevant work as a gas station attendant. However, the ALJ found that, despite her limitations, Reynolds could perform other jobs that exist in significant numbers in the national economy. Thus, the ALJ determined that Reynolds was not disabled. Accordingly, the ALJ denied Reynolds' applications for DIB and SSI.

On January 7, 2009, Reynolds appealed the ALJ's decision to the Appeals Council. On June 19, 2009, the Appeals Council denied review of the ALJ's decision; and, as a result, the ALJ's decision became the Commissioner's final decision. See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on August 17, 2009, Reynolds filed a complaint in this Court seeking review of the ALJ's decision. However, Reynolds passed away on March 31, 2010. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636© and 42 U.S.C. § 405(g).

**II. ANALYSIS**

A. Facts

Reynolds was 33 at the time of the alleged onset of disability and was 36 at the time of the ALJ's decision. Reynolds was five feet, seven inches tall and weighed approximately two-hundred thirty pounds at the time of the hearing. Reynolds had a high school education; and her past relevant work included work as a cashier, shelf-stocker, and gas station attendant. Reynolds alleged that she suffered from both physical and mental limitations. Specifically, Reynolds alleged that she suffered from severe chronic abdominal pain, irritable bowel syndrome, fibromyalgia, chronic fatigue, and depression. Reynolds alleged a disability onset date of December 20, 2005.

Reynolds testified that she frequently suffered from abdominal pain, ranging from moderate to severe. In addition, Reynolds testified that she suffered from migraine headaches on a weekly basis. As a result of the migraines, Reynolds stated that she would often vomit and was sensitive to light and noise. Reynolds testified that her abdominal pain and migraines were severe enough to require daily doses of Vicodin. Reynolds also remarked that she suffered from

fibromyalgia which affected her elbows, fingers, knees, shoulders, and wrists.  Further, Reynolds testified that she maintained a poor diet and would often not eat on a regular basis.  Reynolds admitted to smoking a pack of cigarettes per day and drinking large amounts of Dr. Pepper.  Additionally, Reynolds testified that she had been referred to counseling for her depression and had attempted to commit suicide several times.  Finally, Reynolds stated that she spent most of her time in her bedroom, watching tv, playing games, and conversing on the phone.

For treatment of her depression and pain, Reynolds primarily saw Dr. Heckman-Davis.  However, Reynolds also saw several other physicians for consultative examinations.

1. <u>Dr. Heckman-Davis</u>

On April 18, 2005, Reynolds met with Dr. Heckman-Davis ("Dr. Davis"), her treating physician, for an initial consultation.  Dr. Davis placed Reynolds on Adderall to treat her attentional deficit disorder.  In addition, Dr. Davis recommended that Reynolds stop consuming caffeine and eat regular meals. Dr. Davis subsequently noted that Reynolds had improved while on Adderall.

On September 19, 2005, Dr. Davis completed a letter to the state disability determination services.  In the letter, Dr. Davis reported that Reynolds had mildly limiting physical problems, migraine headaches, and chronic back pain.  Dr. Davis also noted that Reynolds suffered from chronic depression, chronic tension headaches, and acute stress reactions.  However, Dr. Davis observed that Reynolds was fairly stable as a result of her prescribed medications.  Further, Dr. Davis stated that she was unable to determine if Reynolds' mental impairments limited her ability to perform work.

On March 10, 2006, Dr. Davis completed a report of psychiatric status for Reynolds.  In

the report, Dr. Davis diagnosed Reynolds as suffering from fibromyalgia, hypoglycemia, adult attention deficit disorder, and depression. Overall, Dr. Davis remarked that Reynolds was stable, but had made little progress and was in worse condition than in 2005.

On January 11, 2007, Reynolds met with Dr. Davis. Dr. Davis noted that Reynolds was walking normally and reported a negative straight leg test. Subsequently, Dr. Davis observed that Reynolds was still suffering from migraines, was more depressed, and continued to smoke. Dr. Davis also stated that, while medication was helping Reynolds, she was still experiencing fibromyalgia and knee pain.

In May of 2008, Dr. Davis observed that Reynolds continued to consume an inappropriate diet and large amounts of caffeine. In addition, Dr. Davis stated that Reynolds' depression had grown worse and had progressed to suicidal ideation. Dr. Davis opined that Reynolds was temporarily unable to work as a result of her chronic abdominal pain, headaches, and learning disability. Subsequently, in June of 2008, Dr. Davis reported that Reynolds' mental status had improved and she was no longer suicidal.

    2.  Dr. Grange

On November 25, 2005, Reynolds met with state examiner Dr. Grange for a mental health assessment. Initially, Dr. Grange reported that Reynolds had been diagnosed with depression and panic disorders. However, Dr. Grange determined that Reynolds listings did not meet the B criteria listings. In particular, Dr. Grange observed that Reynolds suffered from mild limitations in daily living, moderate difficulties in social functioning, moderate difficulties in maintaining concentration and pace, and no episodes of decompensation. Accordingly, Dr. Granger determined that Reynolds was capable of performing simple, repetitive tasks.

### 3. Dr. Yergler

On May 10, 2006, Reynolds consulted with orthopedist Dr. Yergler. Dr. Yergler noted that Reynolds complained of pain, swelling, and weakness in the knees. Upon examination, Dr. Yergler found that Reynolds had a full range of motion and normal stability, but also significant patellofemoral crepitus and pain with compression. Surgery was recommended, and Dr. Yergler reported that Reynolds underwent arthroscopic surgery for both knees in May. Finally, Dr. Yergler noted that both procedures were successful and that Reynolds was suffering less pain in her knees.

### B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C. § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). Further, an ALJ's legal conclusions are reviewed de novo. Haynes, 416 F.3d at 626.

### C. Reynolds' Motion for Summary Judgment or Remand

To be entitled to benefits under the Social Security Act, Reynolds' must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

6

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves her unable to perform her past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.

If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpart P, § 404. However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five. 20 C.F.R. § 404.1520(e). The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five. Id.

The major issues this Court must resolve are: (1) whether Reynolds' was denied due

process of law when the Appeals Council denied access to the audio tape, the ODAR exhibits, and rejected Reynolds' request for time to file a memorandum of law, (2) whether the ALJ erroneously found Reynolds not credible, (3) whether the ALJ's RFC finding is supported by substantial evidence, and (4) whether the ALJ sufficiently articulated his reasoning for rejecting evidence from Reynolds' treating physician. This Court will address each of Reynolds' arguments in turn.

    1.    <u>The Appeals Council's actions did not deny Reynolds due process of law.</u>

Reynolds argues that she was denied due process and effective assistance of counsel before the Appeals Council. Specifically, Reynolds argues that the Appeals Council violated federal regulations when it denied review of Reynolds case without providing her counsel with requested materials or an opportunity to submit a memorandum of law before making its decision.

On November 14, 2008, the ALJ found Reynolds was not disabled and her request for SSI was denied. On January 7, 2009, Reynolds filed her request for an Appeals Council review. On March 13, 2009, Reynolds wrote a letter to the Appeals Council requesting documents from the Appeals Council, per 20 C.F.R. § 404.974. In the same letter, Reynolds also requested time to file a memorandum of law, per 20 C.F.R. § 404.1780.

On April 16, 2009, Reynolds received a letter from the Appeals Council stating that, because she allegedly filed her request for review of the ALJ's opinion more than sixty days after the ALJ's decision, her request for review was being denied. It is the Appeals Council's procedure that, if requesting a hearing more than sixty days after the ALJ made a final ruling, the claimant must supply a reasonable explanation, detailing the delay. On April 27, 2009, Reynolds

sent a letter, which clarified the false assumptions made by the Appeals Council. Specifically, the letter explained that her March 13 letter was not her formal request for review. Instead, Reynolds informed the Appeals Council that she filed her request on January 7, which was within the sixty day requirement.

On June 19, 2009, in a letter, the Appeals Council acknowledged their error and noted that Reynolds did submit her request for review on time. However, the letter did not address Reynolds' request for documents or the requested opportunity to file a memorandum of law in support of her review. As such, Reynolds argues that the Appeals Council has acted in violation of the federal regulations, specifically 20 C.F.R. § 404.1780, which states that "upon request, the Appeals Council shall give the parties a reasonable time to file briefs or other written statements as to fact and law."

It appears from the text of the C.F.R. that the Appeals Council did not follow its procedure. However, in support of her position, Reynolds cites only to the C.F.R, and does not cite any case law in this circuit which has adopted this regulation as binding authority in this Court. As such, this Court is reluctant to give, what is considers to be persuasive authority, such as the C.F.R., status as binding authority.

Further, this Court does not consider Reynolds to have been prejudiced by the denial of a hearing before the Appeals Council. Reynolds has not indicated what arguments she could have made before the Appeals Council that she was not able to raise before this Court in her immediate motion. As such, absent a clearer articulation of the prejudice caused by the Appeals Council denial of a hearing prior to denying review, this Court considers that there is none.

Accordingly, this Court finds that the actions of the Appeals Council did not deny

9

Reynolds due process of law.

        2.      <u>The ALJ's determination of Reynolds' credibility is also supported by substantial evidence.</u>

Reynolds claims that the ALJ erred in finding her not to be fully credible. Specifically, Reynolds argues that the ALJ erred in drawing a negative inference about her credibility from the fact that she was non-compliant with numerous medical treatment opinions.

Since an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. <u>Jens v. Barnhart</u>, 347 F.3d 209, 213 (7th Cir. 2003). <u>See</u> also <u>Prochska v. Barnhart</u>, 454 F.3d 731, 738 (7th Cir. 2006). Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. <u>Golembiewski v. Barnhart</u>, 322 F.3d 912, 915 (7th Cir. 2003); <u>Steele v. Barnhart</u>, 290 F.3d 936, 942 (7th Cir. 2002). An ALJ cannot simply state that an individual's allegations are not credible. <u>Golembiewski</u>, 322 F.3d at 915. However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." <u>Rice v. Barnhart</u>, 384 F.3d 363, 370 (7th Cir. 2004) (<u>quoting</u> <u>Diaz v. Chater</u>, 55 F.3d 300, 308 (7th Cir. 1995)).

This Court finds the ALJ's credibility determination to be reasonable. Noting the ALJ's extensive discussion of the record evidence, this Court can clearly see how each of the ALJ's evaluations are supported from evidence found in the record. As such, in his analysis, the ALJ relied on the relevant medical reports, treatment notes, treatment history, and Reynolds' own testimony to determine that she was not credible.

The ALJ based his conclusion on numerous grounds, including; the lack of objective

medical evidence supporting Reynolds' testimony, the lack of treatment received by Reynolds for the alleged illnesses, the exaggerated nature of Reynolds' claims during the hearing and, most prominently, Reynolds' failure to follow numerous doctor instructions regarding her medical treatment. For instance, at the hearing, Reynolds testified that arthroscopic surgery on both her knees and ankle surgery have not helped her knee or ankle pain. However, the ALJ noted that the treatment records showed that Reynolds did well after these orthopedic surgical procedures. Additionally, the ALJ noted that, although Reynolds testified that her physician had told her to avoid caffeine, Reynolds' mother testified that Reynolds was addicted to Dr. Pepper. Further, the ALJ examined and explained the various inconsistencies in Reynolds' testimony, regarding her daily living, explaining that Reynolds can take care of her personal needs such as: chores and cooking, with assistance from her cousins and mother. Such discussion of the evidence suffices to create the requisite evidentiary support and logical basis that is necessary for this Court to uphold the determination. See Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). Therefore, because the ALJ relied on substantial evidence in the record and sufficiently articulated his reasoning for discrediting Reynolds' testimony, this Court concludes that the ALJ's credibility determination is sufficiently articulated and substantially supported.

       3.      <u>The ALJ's RFC determination is supported by substantial evidence</u>.

Reynolds asserts that the ALJ improperly determined her RFC. In particular, Reynolds alleges that the ALJ's finding of mild restrictions in daily living is not supported by the evidentiary record.

A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion.

Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005). An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). A decision is supported by substantial evidence if based upon "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1972). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). An ALJ need not provide a written evaluation of every piece of testimony and evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). Instead, an ALJ need only minimally articulate his justification for accepting or rejecting specific evidence of disability. Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004).

To begin, this Court commends the ALJ on his thorough and lengthy discussion of the evidence. Given the thoroughness, this Court concludes that the RFC analysis performed by the ALJ is sufficient to create the logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. In his RFC analysis, the ALJ considered specific limitations according to Reynolds' particular ailments. For instance, the ALJ considered Dr. Davis' report, that stated Reynolds could not carry more than twenty pounds; and, accordingly, limited Reynolds' RFC to light exertional work. The ALJ also included a sit/stand option, stating that it accounted for Reynolds' residual knee, abdominal, back and ankle pain. In addition, the ALJ considered these impairments, as they may have been exacerbated by Reynolds obesity. Further, the ALJ also limited Reynolds to only occasional postural maneuvers excluding climbing ladders, ropes or scaffolds, on account of Reynolds' abdominal and musculoskeletal pain. Reynolds headaches

12

were also factored into the ALJ's RFC determination, as the ALJ added a limitation regarding exposure to bright lights and loud noises.

In light of the ALJ's exhaustive analysis and particularized designation of limitations, this Court finds that the ALJ's RFC determination is sufficiently articulated and supported by substantial evidence.

    4. <u>The ALJ's finding of facts regarding the opinions of Dr. Davis and Reynolds' complaints of pain are substantially supported.</u>

Finally, Reynolds argues that the ALJ's findings of fact were deficient because the ALJ failed to adequately explain his reasoning for rejecting specific pieces of evidence.

To begin, Reynolds claims that the ALJ improperly rejected the most recent diagnostic letter from Reynolds treating physician, Dr. Davis. In this letter, Dr. Davis opined that Reynolds was temporarily disabled, due to her learning disabilities. More weight is generally given to the opinion of a treating physician because he is more familiar with the claimant's conditions and circumstances. <u>See</u> 20 C.F.R. § 404.1527(d)(2); <u>Clifford v. Apfel</u>, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. <u>See</u> <u>Dixon v. Massanari</u>, 270 F.3d 1171, 1177 (7th Cir. 2001). Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. <u>See</u> <u>Clifford</u>, 227 F.3d at 870. When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one additional piece of evidence for the ALJ to weigh. <u>See</u> <u>Hofslien</u>, 439 F.3d 375, 377 (7th Cir. 2006).

Reynolds' argument relies on her belief that the ALJ improperly rejected the most recent 2008 diagnostic letter from Reynolds' treating physician, Dr. Davis, and did not provide adequate reasons for failing to note a letter Dr. Davis wrote in 2006. However, this Court finds

13

that the ALJ made sufficiently clear the amount of weight he gave to Dr. Davis' medical opinion and the reasons for that weight. See 20 C.F.R. § 404.1527(d)(2); S.S.R. 96-8p.

In his opinion, the ALJ contended that Dr. Davis' medical evidence was internally inconsistent. The ALJ questioned why, in the 2008 assessment, Dr. Davis suddenly opined that Reynolds was temporarily disabled, when there had been no substantial change in her condition. The ALJ also noted that Reynolds had performed semi-skilled work in the past, despite her diagnosed learning disability. Thus, the ALJ noted inconsistencies within Dr. Davis' records.

Similarly, the ALJ also contended that Dr. Davis' medical evidence was inconsistent with other evidence in the record. In particular, the ALJ noted Dr. Davis' indication that, if Reynolds were to have the abdominal surgery, it would relieve her pain, which might lessen her headaches. The ALJ then noted that Dr. Davis' opinion contradicted the medical opinions of Dr. Poulin and Dr. Rose, who both indicated that surgery would not help Reynolds' condition.

Because sufficient contradicting evidence was introduced and discussed, this Court holds that the ALJ's decision to afford the treating physician's opinion lesser weight is substantially supported. See Hofslien v. Barnhart, 439 F.3d at 376. See 20 C.F.R. § 416.927(c)(2) (Medical evidence may be discounted if its internally inconsistent or inconsistent other evidence). In addition, while the ALJ did not specifically address the 2006 letter in his finding, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice, 384 F.3d at 370. Further, in light of the ALJ's extensive development and discussion of the record evidence in this case, this Court finds that the ALJ's discussion of the relevant medical evidence and the development of the record to be proper.

Next, Reynolds argues that the ALJ erroneously rejected evidence of her constant pain.

14

In this regard, Reynolds makes three specific arguments, all of which this Court finds unpersuasive. First, Reynolds argues that the ALJ failed to account for Reynolds intensity and persistence of pain with respect to her abdominal pain. In addressing Reynolds' abdominal pain, the ALJ noted Reynolds' recent tests, which showed no major abdominal problems. The ALJ also noted Reynolds' CT scan, which also revealed no acute abdominal process or a bowel obstruction. This Court finds this to be a sufficient articulation of the evidence by the ALJ. Second, Reynolds argues that the ALJ failed to consider how Reynolds' fibromyalgia affected her disability status. Contrary to Reynolds' assertions, however, the ALJ noted the treatment records that were submitted after the State Agency physicians reviewed the medical evidence, which included Reynolds' complaints of fibromyalgia. Accordingly, it can not be argued that the ALJ failed to consider Reynolds' fibromyalgia, when the ALJ specifically noted it in his decision. As such, this Court finds Reynolds' argument, in this respect, to also be without merit. Third, Reynolds argues that the ALJ failed to address how Reynolds' headaches would not limit her ability to work. This Court finds this allegation to be completely false. In fact, the ALJ specifically accounted for the limiting affects of Reynolds' headaches and stated so, when he prohibited Reynolds from being exposed to bright lights and loud noises.

In conclusion, the Court finds that the ALJ's decision regarding the weight afforded Dr. Davis' opinions and the evidence related to Reynolds' pain, were supported by substantial evidence and sufficiently articulated.

### III. CONCLUSION

For the aforementioned reasons, this Court concludes that Appeals Councils' actions did not deny Reynolds due process of law. In addition, this Court concludes that the ALJ's RFC

15

determination was supported by a substantially supported and sufficiently articulated analysis. Further, this Court finds that the ALJ's determination of Reynolds' credibility was also substantially supported. Finally, this Court concludes that the ALJ sufficiently articulated his reasons for rejecting Dr. Davis' opinions and evidence of Reynolds' pain. Therefore, this Court **DENIES** Reynolds's motion for summary judgment or remand. [Doc. No. 22]. Accordingly, this Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk is **INSTRUCTED** to term the case and enter judgment in favor of the Commissioner.

       **SO ORDERED.**

       Dated this 2nd Day of August, 2010.

                                                S/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge